GRANT, J.
It has been intimated that the function of this court in this case is likely to be propaedeutical to the Supreme Court.
But be that as it may, it is not the less our duty to examine this record with as much painstakingness as if here was to be an end of the litigation.
The statute under which the plaintiff below — defendant here — must recover, if at all is Section 1465-68, General Code, in its present amended form, and which reads as follows:
“Every employee mentioned in subdivision one of section fourteen hereof who is injured, and the dependents of such as are killed in the course of employment, wheresoever such injury has occurred, provided the same was not purposely self-inflicted, on or after January 1,1914, shall be paid such compensation out of the state insurance fund for loss sustained on account of such injury or death” * *' *
In this case a claimed result or sequence of the employee’s injuries was his insanity. "While thus bereft of reason he committed suicide.
The question then is, was his death “purposely” self-inflicted? If it was, there should be no recovery.
A judgment for the plaintiff was had in the court below. We are asked to reverse it, because, it is said the injury otherwise called death was self-inflicted.
What seems to be the accepted text-book rule on the subject, is laid down in 2 Honnold, Workmen’s Compensation, p. 508, Ihus:
“Where there follows as the direct result of a physical injury an insanity such as to cause the workman to take his own life through an unaccountable impulse or in a delirium of frenzy without conscious volition to produce death, having- knowledge of the physical consequences of the act, there is a direct and unbroken connection between the injury and the death. But where the resulting insanity is such as to cause suicide *434 through a voluntary willful choice determined by a moderately intelligent mental power which knows the purpose and the physical effect of the suicidal act, even though choice is dominated by a disordered mind, then there is a new and independent agency, which breaks the chain of causation arising from the injury,”
The contention of the Industrial Commission at this point, stated in terms of its brief, is as follows:
“There is no evidence which would in any way tend to prove that Mr. Boyd committed suicide by reason of ‘an unaccountable impulse or in a delirium of frenzy.’ ”
The proof on such a question must of necessity generally be meager in amount and more or less speculative in outcome. Inference must arise, if at all, from a distorted viewpoint on the part of the suicide and the workings of an insane man’s mind are so curious, so complex, having their springs and sources often in a remote and almost undiseoverable concatenation of happenings, that to trace the outcome satisfactorily, or to- any approximate degree of certainty, is difficult at all times and at many times impossible. Witness Mr. Lorry in the “Tale of Two Cities.” An insane person — so common experience shows — is prone to destroy himself. The impelling force to the act he seems to have no power to resist, and yet he often seems, even when so controlled, to be cunning and calculating in his concealment of his enforced yielding to the impulse of self-destruction, to a degree that a conclusion is often drawn that the ingredient of premeditation, a fixed and thought-out purpose, an intent, is present, which would to appearance exclude the notion of an involuntary taking of his life through an uncontrollable and overpowering force outside of himself and beyond all volition of his.
Still, courts must act upon evidence, and not speculation. They may, however, recognize in their case in hand experienced truths of conduct and action, known to operate on mankind and to govern human action, within appropriate limits and landmarks fixed by universal observation. One of these truths is, we think, this almost invariable propensity in an insane person to do away with himself without power to resist it.
*435 Evidence from tbe witness stand must be in conflict, because it must rest largely in opinion, in deduction, in inference. It appears to have been in conflict in this case. We cannot agree that there was “no evidence which would in any way tend to prove that Mr. Boyd committed suicide by reason of an unaccountable impulse or in a delirium of „frenzy,” as the brief says.
That different minds would reach different conclusions as to the tendency of the evidence in this respect, is true, probably— perhaps certainly. Our own conclusion in this regard might be different — although we do not say so — from that of the court below. But if it were so, the fact would not warrant a reversal here. The fact that minds would differ in conclusion, of itself commands repose for the judgment, if there was anything in the evidence about which they might fairly differ. We think there was something in this case.
We are not at liberty in any event to disregard this rule of non-intervention by. a x*eviewing court, whenever it appears that the conflict in the evidence is a real one, in resolving which men may honestly vary in conclusion, it being the business of the court of first instance to say where the preponderaney resides. We ought to be especially loath to disturb a judgment rendered in promotion of a statute the purpose of which is highly remedial, and where the policy underlying its administration is avowedly liberal in favor of the remedy, whenever the facts warrant its application.
The act which created the former board of awards — the predecessor in function of the plaintiff in error, declared as follows :
“Such board shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided; but may make the investigation in such a manner as in their judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this act.”
We are not by this relieved of the duty of declaring the law of the ease; but we are admonished that the plain legis *436 lative wish is not to have the law administered in any grudging or cheese-paring fashion.
In our opinion there is some evidence in the case, the tendency of which is to establish the inference which is embodied in the judgment under review. It is, therefore, affirmed.
Dunlap and Lawrence, JJ., concur.